IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-794-2

Filed: 6 October 2020

Mecklenburg County, No. 16CRS210771

STATE OF NORTH CAROLINA

v.

TENEDRICK STRUDWICK

Appeal by defendant from order entered 19 December 2017 by Judge Yvonne Mims Evans in Superior Court, Mecklenburg County. Heard in the Court of Appeals 13 February 2019, and opinion filed 6 August 2019. Remanded to this Court by order of the North Carolina Supreme Court for further consideration in light of *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019).

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya M. Calloway-Durham, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Nicholas C. Woomer-Deters, for defendant-appellant.*

STROUD, Judge.

Defendant Tenedrick Strudwick timely appealed from the trial court's order requiring him to enroll in lifetime satellite-based monitoring following his future release from prison. On 6 August 2019, this Court filed an unpublished opinion reversing the trial court's civil order mandating lifetime satellite-based monitoring. *See State v. Strudwick*, ___ N.C. App. ___, 830 S.E.2d 703 (2019) (unpublished). The

State subsequently filed a petition for discretionary review with the North Carolina Supreme Court. On 30 October 2019, the Supreme Court allowed the State's petition for discretionary review for the limited purpose of remanding to this Court for reconsideration in light of the Supreme Court's decision in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"). Upon reconsideration, we reach the same result as our previous opinion and reverse the trial court's order mandating lifetime satellite-based monitoring.

## I.    Background

We described the factual background of this case in our prior opinion:

> Defendant pleaded guilty to first degree rape, first degree kidnapping, and robbery with a dangerous weapon and was sentenced to 30 years minimum to 43 years maximum in prison. At a later hearing on SBM, the State presented Shakira Jones, a probation officer with the Department of Public Safety for the sex offender population. Ms. Jones testified about SBM and the Static-99 form which is used to "determine the offender's risk level . . . to determine whether they're a risk for future offenses or to re-offend." Ms. Jones filled out a Static-99 form for defendant, and he had a total score of 3, which placed him in the "Average Risk" category. At the conclusion of the State's evidence, the trial court denied defendant's motion to dismiss the SBM proceedings and subsequently ordered defendant to submit to lifetime SBM. Defendant timely appealed.

*State v. Strudwick*, ___ N.C. App. ___, 830 S.E.2d 703 (alteration in original).

The procedural situation in *Grady III* was quite different from this case. Mr. Grady was sentenced to imprisonment in 2006, served his sentence, and "was

unconditionally released from prison on 25 January 2009 and received certification that his rights of citizenship were 'BY LAW AUTOMATICALLY RESTORED.'" *Grady III*, 372 N.C. at 511, 831 S.E.2d at 547.  In March 2010, Mr. Grady was notified that a hearing was scheduled to determine whether he should be subject to SBM:

> the North Carolina Department of Correction (DOC) sent a letter to Grady informing him that it had made an initial determination that he met the statutory criteria of a "recidivist," which would require his enrollment in the SBM program, and giving him notice to appear at a hearing at which the court would determine his eligibility for SBM. Before a hearing was held, he pleaded guilty on 27 October 2010 to failure to maintain his address with the sex offender registry and was sentenced to twenty-four to twenty-nine months in prison.  He served that term of imprisonment and was again unconditionally released on 24 August 2012.  A new hearing was scheduled for 14 May 2013 in the Superior Court in New Hanover County to determine if Grady should be required to enroll in the State's SBM program.

*Id.* at 512, 831 S.E.2d at 547.  Mr. Grady "filed a motion to deny the SBM application and dismiss the proceeding" based in part upon his contention that "the imposition of the monitoring upon Defendant violates his rights to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment of the United States Constitution and Article I, Section 20 of the North Carolina Constitution." *Id.* at 515-16, 831 S.E.2d at 549.  The trial court denied Mr. Grady's motion, found he was a "recidivist" as defined by statute, and ordered him to enroll in SBM for the rest of his life.  *Id.* at 516 831 S.E.2d at 550.

After extended appellate proceedings, the Supreme Court ultimately held SBM was an unconstitutional search as applied to Mr. Grady and others in the same category as Mr. Grady. *Grady III* limited its holding to a particular group of defendants, "recidivists" as defined by North Carolina General Statute § 14-208.6(2b):

> In light of our analysis of the program and the applicable law, we conclude that the State's SBM program is unconstitutional in its application to all individuals in the same category as defendant—specifically, individuals who are subject to mandatory lifetime SBM based solely on their status as a statutorily defined "recidivist" who have completed their prison sentences and are no longer supervised by the State through probation, parole, or post-release supervision. We decline to address the application of SBM beyond this class of individuals.

*Id.* at 522, 831 S.E.2d at 553 (footnote omitted).

## II. Analysis

Although *Grady III's* holding does not directly apply to Defendant in this case, who was not classified as a "recidivist," the analysis of the issue described in *Grady III* does apply to this case. *See State v. Griffin*, ___ N.C. App. ___, ___, 840 S.E.2d 267, 273 (2020) ("Although *Grady III* does not compel the result we must reach in this case, its reasonableness analysis does provide us with a roadmap to get there. As conceded by the State at oral argument, *Grady III* offers guidance as to what factors to consider in determining whether SBM is reasonable under the totality of the circumstances. We thus resolve this appeal by reviewing Defendant's privacy interests and the nature of SBM's intrusion into them before balancing those factors

against the State's interests in monitoring Defendant and the effectiveness of SBM in addressing those concerns. (citing *Grady III*, 372 N.C. at 527, 534, 538, 831 S.E.2d at 557, 561, 564.")).

And although Mr. Grady had already completed his sentence when his SBM hearing was held, the order directing Defendant to enroll in SBM will not take effect until after Defendant is released from prison, when he will be in essentially the same position as Mr. Grady. If he is subject to any sort of post-release supervision, his privacy interests will be reduced during that supervision. But once he has served the sentence and completed any post-release supervision, his privacy interests will be the same as Mr. Grady's. *See Grady III*, 372 N.C. at 531, 831 S.E.2d at 559-60 ("This is especially true with respect to unsupervised individuals like defendant who, unlike probationers and parolees, are not on the 'continuum of possible [criminal] punishments' and have no ongoing relationship with the State." (alteration in original)). The primary factual difference between Mr. Grady and Defendant is that Mr. Grady's SBM was to begin immediately, *id.* at 520, 831 S.E.2d at 552, and Defendant's SBM will not begin until thirty to forty-three years in the future.

In addition, this case is one of several considered by this Court after *Grady III* addressing a similar issue for defendants sentenced for a crime and simultaneously, or soon after sentencing, ordered to enroll in SBM either for a term of years or for life, with the SBM to begin only after completion of the imprisonment. This Court has

already addressed this issue, and we are bound to follow those precedents. *E.g.*, *State v. Gordon,* ___ N.C. App. ___, 840 S.E.2d 907 (2020).

We are unable to distinguish the factual situation of this case, where Defendant is not a recidivist and will not be released from prison for thirty to forty-three years, from *State v. Gordon,* ___ N.C. App. ___, 840 S.E.2d 907,[1] where the defendant was not eligible to be released from prison for fifteen to twenty years. In *Gordon*, the defendant pled guilty to "statutory rape, second-degree rape, taking indecent liberties with a child, assault by strangulation, and first-degree kidnapping" in February 2017. *Id.* at ___, 840 S.E.2d at 909. The trial court in *Gordon* determined the defendant was convicted of an "'aggravated offense' under N.C. Gen. Stat. § 14-208.6(1A)" and ordered him to enroll in SBM "for the remainder of his natural life upon his release from prison." *Id.* at ___ 840 S.E.2d at 909.

In *Gordon*, this Court fully analyzed the effect of *Grady III* on its reconsideration. *Id.* at ___, 840 S.E.2d at 912-14. Although the defendant in Gordon and Defendant in this case were not convicted of the same offenses and there are factual differences in their situations, none of those differences change the legal analysis under *Grady III*. *See Grady III*, 372 N.C. at 522, 831 S.E.2d at 553. One of

---

[1] As was the case in *State v. Hutchens*, we acknowledge, "that, following the Supreme Court's orders temporarily staying this Court's decisions in both *Griffin* and *Gordon*, the precedential value of those decisions is in limbo. While they are not controlling, neither have they been overturned. They are instructive as the most recent published decisions of this Court addressing *Grady III's* application outside the recidivist context[.]" ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (16 June 2020) (No. COA 19-787).

the factual differences is that defendant's term of SBM will not begin for at least

thirty years, while Gordon's could begin in only fifteen years. *State v. Gordon*, ___

N.C. App. at ____, 840 S.E.2d at 911. This difference only reduces the State's ability

to "demonstrate reasonableness" of the SBM since it

> is hampered by a lack of knowledge concerning the
> unknown future circumstances relevant to that analysis.
> For instance, we are unable to consider "the extent to which
> the search intrudes upon reasonable privacy expectations"
> because the search will not occur until Defendant has
> served his active sentence. The State makes no attempt to
> report the level of intrusion as to the information revealed
> under the satellite-based monitoring program, nor has it
> established that the nature and extent of the monitoring
> that is currently administered, and upon which the present
> order is based, will remain unchanged by the time that
> Defendant is released from prison.

*Id.* at ____, 840 S.E.2d at 912–13 (citation omitted).

In *Gordon*, prior to its remand by the North Carolina Supreme Court, the

concurring judge noted that

> this case is controlled by our recent decisions in *State v.*
> *Griffin*, —— N.C. App. ——, 818 S.E.2d 336, 2018 N.C.
> App. LEXIS 792 (2018), and *State v. Grady*, —— N.C. App.
> ——, 817 S.E.2d 18, 2018 N.C. App. LEXIS 460 (2018)
> (Grady II). Under this precedent, the State failed to meet
> its burden to justify satellite-based monitoring in this case.

261 N.C. App. 247, 261, 820 S.E.2d 339, 349 (2018), *remanded for reconsideration*,

372 N.C. 722, 839 S.E.2d 840 (2019). The concurring judge pointed out the problem

this presented:

the majority's view [is] that the State must divine all the possible future events that might occur over the ten or twenty years that the offender sits in prison and then prove that satellite-based monitoring will be reasonable in every one of those alternate future realities. That is an impossible burden and one that the State will never satisfy.

*Id.* at 262, 820 S.E.2d at 350.

As the quote, often attributed to Yogi Berra goes, "It's tough to make predictions, especially about the future." Although courts must still address other elements of the analysis of the reasonableness of SBM for a particular defendant, *see Grady III*, 372 N.C. at 545, 831 S.E.2d at 569, the problem of the timing of the SBM hearing could be eliminated by a simple procedural change. Our General Assembly could remedy this "impossible burden" imposed upon the State by amending the relevant statutes to direct that the hearing regarding a defendant's eligibility for SBM must be held close to the time of release from prison, particularly in cases where the defendant will be imprisoned for many years. The SBM hearing could be held at a time when all the relevant circumstances, such as the defendant's condition, situation, and the state of monitoring technology, are known. This change in procedure would also allow our current district attorneys, defense attorneys, trial judges, and appellate courts to work on addressing the urgent matters facing our courts right now instead of attempting to predict the future for defendants who will not even be able to be fitted with an SBM monitor for at least thirty years. But until we receive further guidance from our Supreme Court or new options for addressing

the SBM procedure from the General Assembly, under existing law, we are required by law to reverse defendant's SBM order. "Accordingly, we necessarily conclude that the State has failed to meet its burden of establishing that lifetime satellite-based monitoring following Defendant's eventual release from prison is a reasonable search in Defendant's case. We therefore reverse the trial court's order." *State v. Gordon*, ___ N.C. App. at ___, 840 S.E.2d at 914.

REVERSED.

Judge ARROWOOD concurs.

Judge TYSON dissents with separate opinion.

TYSON, Judge, dissenting.

The Supreme Court of the United States held North Carolina's statutory imposition of satellite-based monitoring ("SBM") effects a search, but did not rule the statute to be unconstitutional. *Grady v. North Carolina*, 575 U.S. 306, 310, 191 L. Ed. 2d 459, 462 (2015). The Fourth Amendment only prohibits "unreasonable searches and seizures" and is not a blanket prohibition of state intrusions upon personal privacy. U. S. Const. Amend IV; *Terry v. Ohio*, 392 U.S. 1, 9, 20 L.Ed.2d 889, 899 (1968) (citation omitted).

The court's order of SBM of a defendant is a constitutional search, if it is reasonable, based upon the "totality of the circumstances[.]" *Grady v. North Carolina*, 575 U.S. at 310, 191 L. Ed. 2d at 462. In considering the "totality of the circumstances," a reviewing court is to consider, among other things, "the nature and purpose of the search and the extent to which the search intrudes upon reasonable expectations of privacy." *Id.*

## I. *State v. Grady*

In its most recent opinion reviewing North Carolina's SBM program, our Supreme Court held that the imposition of SBM was unconstitutional only as applied to a distinct and specific class of former defendants. This holding solely applies to convicted sexual offenders, who meet the statutory definition of a "recidivist," and who are no longer under any form of current or post-release supervision, parole, or probation. *State v. Grady*, 372 N.C. 509, 545, 831 S.E.2d 542, 568-69 (2019) ("*Grady*

*III*") (limiting its holding to post-release "recidivists" as defined by N.C. Gen. Stat. § 14-208.6(2b) (2019), and expressly not applying it to offenders under "probation, parole or post-release supervision.").

## II. *State v. Strudwick*

On 30 October 2019, the Supreme Court allowed the State's petition for discretionary review of the unanimous unpublished opinion in this case "remanding to the Court of Appeals for further reconsideration in light of [that] Court's decision" in *Grady III*. Order, No. 334P19 (Oct. 30, 2019). In the previous opinion, this Court held the trial court's order was unreasonable as applied to Defendant and must be reversed. *State v. Strudwick*, __ N.C. App. __, 830 S.E.2d 703, 2019 WL 3562352 (unpublished) (2019).

In addition to this case, our Supreme Court has remanded to this Court at least five reversals of SBM cases and ordered reconsideration in light of *Grady III. See State v. Anthony,* __ N.C. App. __, 831 S.E.2d 905, *remanded,* 373 N.C. 249, 835 S.E.2d 448 (2019); *State v. Tucker*, __ N.C. App. __, 832 S.E.2d 258, *remanded,* 373 N.C. 251, 835 S.E2d 442 (2019); *State v. White,* 261 N.C. App. 310, 817 S.E.2d 795, 2018 WL 4200979 (2018) (unpublished), *remanded,* 372 N.C. 726, 839 S.E.2d 839 (2019); *State v. Griffin,* 260 N.C. App. 629, 818 S.E.2d 336 (2018), *remanded,* 372 N.C. 723, 839 S.E.2d 841 (2019); *State v. Gordon,* 261 N.C. App. 247, 820 S.E.2d 339 (2018), *remanded,* 372 N.C. 722, 839 S.E.2d 840 (2019).

This Court's analyses of the SBM statute and broad expansions of *Grady III* are clearly in error. We all agree "courts must still address other elements of the analysis of the reasonableness of SBM for a particular defendant."

In *State v. Bursell*, 372 N.C. 196, 200, 827 S.E.2d 302, 305 (2019), our Supreme Court reversed the holding of this Court, asserting the defendant had preserved his constitutional challenge to SBM, despite failing to specifically object before the trial court to the imposition of SBM on constitutional grounds. By failing to clearly raise the constitutional issue before the trial court, the defendant failed to satisfy Rule 10(a)(1) of the Rules of Appellate Procedure, which presents a "mandatory and not directory" requirement for jurisdiction. *Id.* at 199, 827 S.E.2d at 304 (citation omitted).

The majority's analysis correctly notes our Supreme Court held that the "reasonableness" calculus is different when a defendant *is* subject to State supervision. *Grady III*, 372 N.C. at 526, 831 S.E.2d at 556 (differentiating its holding to cases where there is an "ongoing supervisory relationship between defendant and the State"). For instance, in the *Grady III* Conclusion section, the Supreme Court emphasized its holding does not enjoin all of the SBM program's applications, in part, "because this provision *is still enforceable* against a [sex offender] during the period of his or her State supervision." *Id.* at 546, 831 S.E.2d at 570 (emphasis supplied). *See State v. Hilton*, __ N.C. App. __, __, 845 S.E.2d 81, 83 (2020) (holding "the

imposition of SBM on Defendant *during the period of his post-release supervision* constitutes a reasonable search").

A primary factual difference between the defendant in *Grady III* and Defendant here is Grady's post-release SBM was to begin immediately, while Defendant's SBM will not begin, if at all, until years into the future. It is certain, without other intervention, Defendant is and will remain in State custody and supervision in some form, whether active or community-based, for at least 30 years.

This Court cannot forecast nor substitute our judgment for the legislative findings and determinations to compel aggravated offenders to be enrolled in SBM while under the State's supervision. The trial court determined Defendant was convicted of an "'aggravated offense' under N.C. Gen. Stat. § 14-208.6(1A)" and, consistent with the statute, ordered him to enroll in SBM "for the remainder of his natural life."

This Court's decisions cited by the majority's opinion are neither controlling nor compel a contrary result. The Supreme Court granted the State's petitions and entered orders staying this Court's decisions in both *State v. Griffin* and *State v. Gordon*, again based upon *Grady III*. Neither case provides any precedential or binding authority on these facts before us. *Grady III* is the binding precedent.

This Court cannot anticipate nor predict what may or may not occur well into the future, and a prediction or hunch alone is not a legitimate basis to overturn the

trial court's statutorily required and lawful imposition of SBM over a defendant still in custody or under state supervision on constitutional grounds. "In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground. When examining the constitutional propriety of legislation, [w]e presume that the statutes are constitutional, and resolve all doubts in favor of their constitutionality." *State v. Mello*, 200 N.C. App. 561, 564, 684 S.E.2d 477, 479 (2009) (citations omitted), *aff'd per curiam,* 364 N.C. 421, 700 S.E.2d 224 (2010).

Defendant will continue under the State's supervision during his minimum 30 years to maximum 40 years of some form of state supervised incarceration or restraint. If allowed humanitarian or conditional release outside of the State's prison system, *Grady III* does not prohibit as unreasonable Defendant's whereabouts being subject to monitoring. The alternative to SBM is for Defendant to return to prison, where his whereabouts are known and monitored 24 hours a day/7 days a week.

If the State's classification of a crime and imposition of an active sentence is constitutional, which it is, then any lesser restraint upon a defendant, while still under the State's supervision, is also constitutional. If Defendant's status becomes solely as a "recidivist" as defined by N.C. Gen. Stat. § 14-208.6(2b), *Grady III* controls Defendant's SBM status at that time.

III. Conclusion

Under the unrebutted presumption of constitutionality and "totality of the circumstances," Defendant's conviction of an aggravated sexual offense supports "the nature and purpose of the search" to justify the State's supervision and search. *Grady v. North Carolina*, 575 U.S. at 310, 191 L. Ed. 2d at 462. Defendant's lowered expectation of privacy, while remaining under supervision, supports "the extent to which the search intrudes upon reasonable expectations of privacy" to impose SBM. *Id.*

The trial court's findings of fact and conclusions support the efficacy and legality of imposing SBM at this time "as applied *to this particular defendant.*" *State v. Grady,* 259 N.C. App. 664, 674, 817 S.E.2d 18, 26 (2018), *aff'd as modified, Grady III*, 372 N.C. 509, 831 S.E.2d 542. Our Supreme Court's express limitation provides "our holding enjoins application *only to unsupervised individuals.*" *Grady III*, 372 N.C. at 550, 831 S.E.2d at 572 (emphasis supplied).

Defendant was convicted of an aggravated sexual offense, as was determined by the General Assembly, and as defined in N.C. Gen. Stat. § 14-208.6(1a). A trial court has no discretion whether to order lifetime SBM enrollment. N.C. Gen. Stat. § 14-208.40B(c) (2019). Unlike here, the defendant in *Grady III* was not serving an active sentence of incarceration nor remained under State supervision post release. Grady was a prior offender whose, "rights of citizenship which were forfeited on

conviction . . . [we]re by law automatically restored to him" when he was enrolled as a recidivist. *Grady*, 259 N.C. App. at 670, 817 S.E.2d at 24 (citation omitted). The trial court's ruling is presumed to be constitutional and was certainly reasonable, and is consistent with the exclusions our Supreme Court stated in *Grady III. Grady III*, 372 N.C. at 522, 831 S.E.2d at 553.

Defendant remains under active State incarceration and supervision. Upon remand to apply the facts from *Grady III* to those here, Defendant has failed to carry his burden to show the imposition of SBM is unconstitutional as applied to him. The constitutionality of the statute is presumed and the holding in *Grady III* does not prohibit the SBM. The trial court's judgment is properly affirmed. *Mello*, 200 N.C. App. at 564, 684 S.E.2d at 479. I respectfully dissent.